**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sumaiah Said Kharouta, | No. CV-25-03969-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Fouad Omar Takkoush, | |
| Defendant. | |

At issue is Petitioner Sumaiah Said Kharouta's petition (the "Petition" (Doc. 1)) seeking the return of her minor child (the "Child") to the United States from Sweden pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention"), Oct. 25, 1980, 19 I.L.M. 1501, as implemented by the International Child Abduction Remedies Act ("ICARA"), codified as amended at 22 U.S.C. § 9001 *et seq.*  Having considered the parties' submissions, the Petition will be **denied** for lack of subject matter jurisdiction under 22 U.S.C. § 9003(b).

## I.    BACKGROUND

Kharouta and Respondent Fouad Omar Takkoush married in Mesa, Arizona on August 20, 2014.  (Doc. 1 at ¶ 12.)  Their son, the Child, was born in Gilbert, Arizona on December 29, 2013.  (*Id.*)  Kharouta alleges that the Child's habitual residence is Arizona. (*Id.*)

In August 2014, the parties traveled with the Child to Lebanon on roundtrip tickets to visit family.  (*Id.* at ¶ 13.)  After arriving, Takkoush refused to return to the United States,

and the family missed their return flight.  (*Id.* at ¶ 14.)  Kharouta returned to the United States alone in April 2015 after Takkoush purported to "verbally divorce" her under Islamic Sharia law and left her at the Beirut airport.  (*Id.* at ¶ 16.)  Immediately upon arriving back in the United States, she contacted the U.S. Embassy, the U.S. Department of State's Office of Children's Issues, and the FBI "to report the parental kidnapping by [Takkoush]."  (*Id.* at ¶ 17.)

In September 2024, Takkoush told Kharouta that Lebanon was no longer safe and requested her consent to an emergency travel document for the Child.  (*Id.* at ¶ 19.)  Kharouta consented out of concern for the Child's safety.  (*Id.*)  Kharouta alleges that Takkoush retained the Child in Lebanon until approximately October 2024.  (*Id.* at ¶ 18.)  Thereafter, Takkoush transported the Child from Lebanon to Sweden, where Takkoush's mother lives.  (*Id.* at ¶ 20.)  Kharouta alleges, on information and belief, that Takkoush and the Child remain in Sweden.  (*Id.* at ¶ 22.)

In 2025, the parties initiated parallel proceedings.  Takkoush filed an action in Gävle, Sweden on January 30, 2025, seeking divorce and sole custody of the Child.  (*Id.* at ¶¶ 21, 26.)  Kharouta filed for dissolution in Maricopa County Superior Court on May 1, 2025.  (*Id.* at ¶ 29.)  She filed a Hague Convention application with the U.S. Department of State on May 13, 2025.  (*Id.* at ¶ 27.)  She also filed a Hague application in Sweden, which the Swedish district court denied on October 14, 2025, "on the grounds the Child's place of residence before Sweden was Lebanon despite the fact that Lebanon is not a contracting state or party to the Hague Convention."  (*Id.* at ¶ 28.)  The Swedish court also found that the parties have joint custody of the Child.  (*Id.*)

On October 23, 2025, Kharouta filed the Petition seeking the Child's return to the United States under 22 U.S.C. § 9003.  (*Id.* at 7–8.)  Takkoush responded to the Petition on January 23, 2025.  (Doc. 7.)  Takkoush asserted that the Petition had already been adjudicated by a Swedish court and was therefore barred by principles of res judicata and international comity and further asserted that this Court lacks jurisdiction over both him and the Child—who, he contended, are Swedish citizens residing in Sweden and therefore

subject to the jurisdiction of the Swedish courts.  (*Id.* at 2.)

On December 23, 2025, I directed the parties to file supplemental briefing on jurisdictional issues, the effect of the Swedish proceedings, and the Child's habitual residence.  (Doc. 8.)  In his supplemental brief, Takkoush reiterated his res judicata and comity arguments and further asserted that ICARA "does not require personal jurisdiction over the respondent" but "assumes jurisdiction based on location of the child," and that because the Child is located in Sweden, the Swedish courts have jurisdiction.  (Doc. 10 at 3–4.)  Kharouta reiterated that the Child remains in Sweden.  (Doc. 9 at ¶ 56.)

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted).  The court has an independent duty to ensure that it has subject matter jurisdiction over the dispute before it8 and may raise the issue at any time. Fed. R. Civ. P. 12(h)(3).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  *Id.*

The Hague Convention seeks to "'secure the prompt return of children wrongfully removed to or retained in any Contracting State' and 'to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'"  *Abbott v. Abbott*, 560 U.S. 1, 8 (2010) (quoting Hague Convention Art. 1).  The United States implemented the Hague Convention through the enactment of ICARA.  *Id.* at 9.

Under ICARA, a petition for the return of a child is properly heard by "any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed."  22 U.S.C. § 9003(b).  Therefore, a person seeking the return of a child under ICARA must file a petition in a court "where the child is located."  *Id.*; *Duarte v. Bardales*, 526 F.3d 563, 569 (9th Cir. 2008), *abrogated on other grounds by Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). "'Located' under ICARA does not require a showing of residency, but rather turns on the

place where the child is physically present at the time of filing." *Rubeo-Vilchis v. Aguilar Herrera*, 2025 WL 1942428, at *2 (D. Nev. 2025), *report and recommendation adopted*, 2025 WL 1939835 (D. Nev. 2025); *see also Holder v. Holder*, 305 F.3d 854, 869 n.5 (9th Cir. 2002) (adopting the "common-sense definition" of "located" as "the place where the abducted children are discovered" (quoting *Lops v. Lops*, 140 F.3d 927, 937 (11th Cir. 1998))); *Monzon v. De La Roca*, 910 F.3d 92, 99 (3d Cir. 2018) ("If a parent pursues the remedies available for the return of his/her child under ICARA, Congress has clearly required that the parent do so by 'filing a petition . . . in [a] court . . . where the child is located.'" (citing 22 U.S.C. § 9003(b))).

Accordingly, "courts lack jurisdiction over ICARA claims when the child is in another country at the time the petition is filed." *Rubeo-Vilchis*, 2025 WL 1942428, at *2; *see also Olagues v. Kousharian*, 177 F. App'x 537, 538 (9th Cir. 2006) ("The district court properly dismissed this claim for lack of jurisdiction because at the time Olagues filed his action the children were in New Zealand."); *Espinoza v. Mattoon*, 2009 WL 1919297, at *2 (W.D. Wash. 2009) ("In this case, plaintiff's child is physically located in Canada. Accordingly, this Court lacks jurisdiction to hear this matter and plaintiff's complaint is subject to dismissal.").

## III.    DISCUSSION

The Petition alleges that the Child has been in Sweden since approximately October 2024 and that Takkoush and the Child "are currently located in Sweden." (Doc. 1 at ¶¶ 20, 22; *see also* Doc. 9 at ¶ 56.)  The entire premise of the Petition is that the Child remains in Sweden and that I should order his return to the United States.

Because the Child was not physically located within this Court's jurisdiction when the Petition was filed, I lack subject matter jurisdiction under 22 U.S.C. § 9003(b). *Olagues*, 177 F. App'x at 538 (affirming dismissal where the children were physically located in New Zealand); *Rubeo-Vilchis*, 2025 WL 1942428, at *3 (dismissing where the children were physically located in Mexico); *Espinoza*, 2009 WL 1919297, at *2 (dismissing where the child was physically located in Canada).  Regardless of the

- 4 -

circumstances presented, I cannot exercise jurisdiction ICARA has not conferred.

Because I lack jurisdiction, I do not reach Takkoush's argument that the prior Swedish ruling forecloses this action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").

**IT IS ORDERED** that the Petition, (Doc. 1), is **DENIED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.  Denial is without prejudice so that Kharouta may refile in a court with proper jurisdiction should the Child's physical location change.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and close this case.

Dated this 5th day of May, 2026.

_____
Honorable Sharad H. Desai
United States District Judge